The next case on calendar is actually off calendar, Kerner v. Aetna U.S. Healthcare, so we'll proceed to Redd v. McGrath. May it please the Court, I am Michael Snedeker, appearing on behalf of Appellant Paul Redd, and I'd like to reserve two minutes for rebuttal. Okay, you saw how that works, so watch the clock. Very well, Your Honor, picking up a line from Respondent's brief, I believe this case begins with section 2254, and that holds that federal habeas can never be issued unless the state court has issued a decision on the merits. I think that every part of the ADPA and every discussion of its history, of which I'm aware, points to the requirement that federal courts defer to the judgments of state courts. It says nothing about deferring to the judgments of any administrative body. I think the most closely reasoned case that's thus far been published that I know of is White v. the Indiana Parole Board, a decision written by Judge Easterbrook. Judge Posner's later extension in Cox v. McBride that squarely applies to this case was simply taking the logic of Judge Easterbrook and applying it to a case where there had been an administrative decision and holding that that did not have any impact on the tolling of the time under the federal statute. What's happened is I think that other circuits, including the Tenth Circuit, in the case of Berger v. Scott, have not attempted to argue that an administrative law decision is controlling or somehow triggers the time limit, but rather they have redefined an administrative law decision as a factual predicate, which dumbfounds me. The term factual predicate is used in the ADPA and elsewhere, for example, in the section applying to successor petitions to mean that some new fact, and I've attempted to supply the court with several examples of where factual predicates have held to begin the time within which somebody has to file their federal petition, usually applies to some discovery of something that might have DNA on it or an actual fact. Coming back to 2254, 2254A speaks of federal jurisdiction in terms of a person in custody pursuant to the judgment of a state court and that he is in custody in violation of the Constitution and so on. Now, Mr. Red's in custody by virtue of a judgment of the state court, correct? That's correct, Your Honor. Now, what is it that therefore takes him outside of the habeas 2254 jurisdiction? Well, he's squarely within it. The decision we're complaining of was a decision that was finally a decision by the state court that his constitutional rights were not violated by the parole board. The decision by the parole board not to find him suitable for parole and the subsequent upholding of that decision by the state court effectively extended Mr. Red's custody. Of course, it was not the initial crime which landed Mr. Red in prison, but it was a decision in violation of the Constitution of the United States that had a direct impact on the length of his time in state prison. This court has found jurisdiction by a federal habeas petitioner in the case of the McQuillan case, cited by both respondent and appellant. So the jurisdiction is clear if Mr. Red can establish that an unconstitutional finding by the state court has an impact on his liberty by extending his time in state prison. What is your understanding of the provision of the Tenth Circuit relied upon? That's the D1D, the capital D. I'm sure you're familiar with it because that's the key of that decision. How do you interpret that? They are essentially finding that 2244D1D, which refers to a factual predicate, is applicable to an administrative decision. What happened was that Mr. Berger, the petitioner there, was informed by the parole board that on February 17th, 1999. I understand that. But what I want to know is what your opinion is, what is the purpose of D? It's there. The day on which the factual predicate of a claim or claims presented could have been discovered through the exercise of due diligence. What do you think that means? I think it means, Your Honor, the same thing it means in other decision law and within the statute of the ADPA. And it means a fact, a discovery, for example, that a parole board member was bribed by someone to hold against Mr. Redd or some factual finding in the sense that it's used in petitions for habeas corpus all over the land that would make a material difference in the outcome. It's not. I don't think it can be used or equated directly with a decision by an administrative judge or administer a prison disciplinary board, for example, that transmogrifies the concept of a factual predicate. It sort of simultaneously lowers the value of an administrative law decision to a factual predicate akin to the discovery of records within an attorney's file, indicating that he had done something that he contrary to what he had formerly represented. And it also elevates it to some decisive event which would trigger the flow of federal time in a way that would and must be very confusing. What you're saying, then, is even though he comes in under habeas, and even though 2244D1 talks about an application for a writ by a person in custody pursuant to the judgment of a state court, which he is, doesn't say anything about the claim itself that you're taking from 2254, and it puts the one-year statute of limitations, you're saying because it's a parole board, then a parolee or a prisoner who is objecting to a decision of the parole board has no statute of limitations. Is that correct? No. I'm saying that either there is no application of the ADPA or, more likely, the ADPA applies to decisions on the merits by state court. But what does it do with the parole? What does it do with your prisoner, then? What's the statute or timing that he operates under? None? No, he is controlled by the California's highest court's rejection of his claim. And then what? Okay, and they went through, and then what as to federal habeas? He has one year within the California Supreme Court's rejection on the merits of his claim within which to file his federal petition. So you would say the one year does apply, but it's dated from the decision of the California Supreme Court? I think so, Your Honor. Even though that was not a decision, or you're saying that is a decision on the merits? It was. Otherwise, he could not possibly obtain federal relief. Consider for a moment the alternative. I just want to make sure I understand. You're saying that federal habeas is appropriate, that instead of dating it from the administrative appeal, the last date, for example, of the administrative appeal, that when the collateral attack through the state, or the attack through the state, became final by a ruling of the California Supreme Court, then his one-year statute runs from that? I think so, Your Honor. Okay. Were there no judicial remedy offered by the state, perhaps we could talk about some other triggering factor. But there is. It must be followed for Mr. Redd to obtain relief, and it's from that decision that the statute begins to run. Otherwise, you could have, for example, a parole board decision that parole will be denied because of a heinous crime, but it's based on a contradictory or incorrect finding of facts. A state court could then say, well, yes, these findings are contradictory, but I find there's no constitutional right to any decision, however arbitrary or capricious. What's one to do in federal court? I think the appropriate challenge should be to how the state court resolved the claim. And I see I have 54 seconds, so I'll sit down. Thank you. Okay. May it please the Court, I'm Alan Crown. I represent the appellee in this case, the prison warden who is nominally the respondent below. It's our position that the district court correctly decided this case and that the decision of the district court should be affirmed. The AEDPA statute of limitations does apply in this situation, and I believe that the appellant has agreed with the idea that there is a one-year statute that applies,  Yes. And what's wrong with the argument that the claim has to relate to a claim that's been adjudicated by a state court, not some administrative body? I think what we all need to look at is the language of the statute. And the statute says that it runs from the date that the factual predicate is known. And the district judge did not have much guidance on this at the time, but we do now with the other circuits weighing in, the Tenth Circuit in the Berger case, the Fourth Circuit in the Wade case, and the Fifth Circuit in the Kimbrell case. All of them look to the date at which the prisoner knew of the loss of credits or the extension of the time for a parole hearing or whatever other factual predicate caused him to be aggrieved. And I think that's the correct reading of the statute. It's something where if you look at the facts of this particular case, So going over to 2254, his argument that an application for a writ on behalf of a person in custody pursuant to a judgment of the state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings. Now, was there a state court proceeding in which there was an adjudication of the merits of his claim? As to his conviction, yes. What about the failed appeal or attack on the decision of the parole board that went up through the chain in the California state courts? Yes, there was. But under the statute, what we're looking at under subsection A is the conviction itself and the final state court adjudication of that conviction. Right. I understand the conviction. So he's in prison. Now he's seeking parole. The parole board says, no, you're not ready yet. And then he collaterally attacks that up through the state. The California Supreme Court denies his petition. Is that an adjudication on the merits of his claim? It's an adjudication of the particular claim that he's raising in the habeas case, yes. All right. So if that's the claim, why wouldn't the date? That's the claim. That's when he knows that the factual predicate, because now that brings it within 2254 language, doesn't it? Why isn't that the factual predicate if we're going to adopt your reading of 2244 D1D? Because he's known previously of the factual predicate. He's known of that when he's actually received notice of the administrative decision. Do you think that that was the intent in establishing 2244 D1D was to incorporate as a particular fact? They now becomes aware of just a decision of an administrative agency. Or is that really to take care of as opposing counsel says, or something that's discovered that's outside of any kind of a decision by an administrative agency, but something like fraud in deciding it, someone should have been recused in deciding it, that sort of thing? I think that it's often difficult to determine what Congress has intended. I certainly think that the AEDPA was primarily aimed at convictions and the post-conviction remedies that have to do with convictions themselves. So to the extent that Congress was looking at something in particular, that was most likely what it was. But that doesn't need to be the only thing that they were looking at, and certainly the language of the statute that they did adopt is sufficiently broad and under its own terms would apply to other types of post-conviction challenges. So let's take that. Let's suppose that he did meet the one-year statute under your reading, and now he's litigating the issue on habeas. Would you say then that 2254 D doesn't apply then, so that we don't follow the Williams jurisprudence on deference to the state court? In other words, because 2254 D says, as we've been discussing, adjudicated on the merits in a state court proceeding unless adjudication of the claim resulted and the decision is contrary to or so on. So that doesn't apply in a collateral attack, a federal habeas attack, on the decision of the parole board. Is that what you're saying? There might be some deference owed to the parole board. There may be, but it wouldn't be under 2254 D. You're saying administrative proceedings, because those are what we're all concerned about, a parole board ruling. Therefore, the deference that's mandated and made very specific by AEDPA doesn't apply to that review. I'm not prepared to concede that at the moment. That might be a consequence. That isn't something that I specifically looked at in the context of this case,  Now we're talking about the Tenth Circuit case. How about the dispute between the Seventh and Fifth Circuit on the applicability of AEDPA? Well, I think that the Fifth Circuit has looked at these prison proceedings as something different than the other circuits have, and certainly the Tenth Circuit has looked at the language of the statute and applied it directly, rather than going into sort of this other approach that has been taken. What do you see as being the approach that was taken in the Cox case, for example? Well, they've followed through with the idea that the AEDPA statute of limitations and the other provisions don't apply to these post-conviction petitions that involve administrative matters. And so a certificate of appealability is not required, and all the other procedures don't apply. What you were saying when you first stood up is that you view opposing counsel as having conceded that point by saying that AEDPA does apply? Well, that seemed to be where we were going, yes, that there is a one-year statute that applies, and then the only question is the start date. So, yes, that's what I had assumed. So now we're talking about the date from which it is to apply, right? Correct. And you're maintaining that 2244D1D makes it apply from the date of the administrative parole board's decision, because that was when he discovered the factual predicate of his claim? Yes, it might actually be the date he was notified of the decision, but that's when he would know of the claim, yes. And I believe I suggested in my brief that it should be from the date his administrative appeal decision is final, but certainly that's not what the other circuits have done. And upon reflection and rereading the language of the statute, I think that I was incorrect in the brief and that it really runs from the date he's notified of the administrative decision. But it isn't final. It's final if he doesn't take an administrative appeal. But he did. And he did. And he went on to the Supreme Court. Yes. How does he have the factual predicate of his claim until the matter's final? Well, the matter's final unless the administrative appeal is granted, or otherwise it's a final decision. I mean, it becomes final on its own terms that the date it's issued. How is this all going to work? I mean, EPA was supposed to encourage the federal courts to give deference to the state courts, and now we're putting them on a fast track to get a parole. You're backing it up even earlier now, saying as soon as the parole board rules and he's aware of it, boom, his one year runs, so he'd better go off and file his 2254, even though he's got state remedies still available, including an appeal to the administrative appeal and then over to the state court. So what is a federal court supposed to do, just sort of hang around? We've got it on file, protecting it against the statute, and then wait to see what happens on the state or just plunge ahead? Well, under our view, he would have statutory tolling for the period that he's actually in state court. So, for example, in this case he's got to file to prevent the statute and then sit back and toll. So that's your remedy, just letting as soon as the parole board files the 2254 petition, that proceeds until he moves forward and then it's tolled. So it's not running, but that still leaves it up to the federal habeas court to decide the state proceedings, I guess. Well, I don't think he needs to file in federal court before he files in state court. I think if he files in state court that the time that he's actually in state court would be tolled. Well, he's going to lose the time between the time he gets the parole board decision and he goes through the administrative appeal. The clock's running under your reading at that point. Yes. Okay, and then he's got to go over to state. So you're saying it's tolled as soon as he files his notice of appeal on the administrative appeal, that that would toll? No, I'm saying that he would have statutory tolling from the date that he files his state habeas corpus petition. That's what I thought you were saying. So that means the clock's running while he's trying to take this up on appeal, administrative appeal, so he can qualify to get over for the collateral. The clock would be running as far as the statute is concerned. Now, the Berger court, of course, applied equitable tolling to the period that was beyond the inmate's control. Right. So what you're saying is that the way this would work, parole board renders a decision, the prisoner then proceeds, and the statute is running until he goes over and files in the state side, and then it's statutory tolling while it's pending in the state court, and if the Ninth Circuit were to adopt a rule like the Tenth Circuit, you get automatic equitable tolling for the administrative part of it, and then as soon as the California Supreme Court denies relief, then he can come over, and that's effectively when the statute really starts to run, except for the little gap between the parole board and the time he filed his notice of administrative appeal. Essentially, equitable tolling might not apply if the administrative agency provided a very prompt decision, but if it would be a situation like happened in Berger where a government official sat on the filing for four months without doing anything, I think then you do run into some equitable tolling considerations because that is outside the inmate's control. I guess from the standpoint of following your argument of the statutory tolling, when there was eight months that was involved to the state habeas, and then seven months after the California decision so that would exceed the one year, is that why there's no statutory tolling? Yes. There would be a period from January 19, 2001 to September 18, 2001 that's not tolled, and then there would be another period that would be sometime before December 7, 1998, when the administrative agency denied his appeal because he knew about it before then, until he filed his state court petition August 9, 1999. Well, I calculated it to be eight months and seven months. Is that right? If you haven't calculated it. Sixteen months, right? Between the two. I had it around 18 months, but, yes, we're talking about. Either way, it's over 12. Yes. In this case, it's definitely well over 12 months. Okay. All right. I see my time is up. Thank you, Bernie. Judge Gibson? I have no questions. Thank you. Sure. Mr. Snedeker? Your Honors, I think you have a vivid example here of the thorny ground you will get into. Let's clarify. You've been alleged to have conceded that the EDPA one-year statute does apply. Do you agree with that? I think so long as California offers the habeas corpus process, my reading is that it would not apply only for states that offer no possible judicial remedy to administrative error. So in that case, I believe it does. So you would disagree with the Cox opinion? Well, in Cox, they pointed out that Indiana offered no way, no reasonable way in the White case and Cox case. They pointed to the lack of any judicial remedy to the administrative decisions that the prisoners in Indiana wanted to complain about. But here in California, there is the process, and it's quite clear that you, of course, do have jurisdiction and can rule for an inmate. But here we have a contention by the district court and initially by a respondent that the operative date began when the administrative appeal was denied. That's sort of equating the administrative process to a judicial process. Let's assume that or it's from the date of the administrative appeal, either one. What's the harm to a prisoner if tolling accommodates the gaps that the time that he's pursuing his administrative appeal and then his collateral attack? Well, it's not at all clear that respondent or anyone else has contended that the time in which an administrative appeal is running does toll. But in any event, it's certain that the state prison systems can and do constantly change the requirements for administrative appeals and lengthen the time within which they're required to decide the administrative appeal. But what if the rule were that it says so long as the let's just hypothesize that in the Ninth Circuit, there's a rule that says if you're diligently pursuing your administrative appeal, then there's equitable tolling. And once you get over to the collateral attack in the state courts, then there's statutory tolling from there. I think you're opening yourself up to a host of disputes over what diligently pursuit would mean. The state court, the Department of Corrections and the parole board can and do change the requirements frequently. It's not at all clear that they always distribute these changes in a timely way. So what if we then make it from the date? We let's suppose hypothetically there is a the rule is that it runs from what the state originally had argued from the date. The administrative appeal becomes final. Boom. Then it's a final decision of an administrative body. And then it starts to run subject to statutory tolling under collateral. If you separate them, you have two tracks going. One, the administrative appeal process and another petitions filed in federal court or or state court. And I think you've got a proliferation of attempted remedies that does not respect the states and their own way of resolving matters. And I think the 10th the 10th Circuit said we recognize that as a federal statute that interacts with state procedure, rules will sometimes force a state prisoner to act expeditiously to preserve his federal claims, despite procedural lenience of state law. I understand that I'm still trying to know that they're pitfalls. I'm trying to understand as a practical matter. I was trying to direct this to the state's attorney as well. If the rule were that the prisoner gets a parole board decision, let's assume that the administrative appeal has to happen and become final before the prisoner, if we adopt the state's rating, knows the predicate for his claim. Now he's got that. And that is a final decision of the parole board slash administrative process. OK. Now the statute, the one year statute starts to run. He goes to the state court and initiates, files a petition for collateral review. That's statutory tolling. He files, could either file then a protective 2254 habeas petition, or he could wait out the collateral attack until he gets a decision from the highest California court. And then he files. What's the difficulty in that kind of a system or a regime? I think that if I understand what your hypothetical, that Your Honor is asking the federal courts to give full faith and credit to this final administrative law decision. Now that's the idea first proposed by respondent, and it was ruled by the district court. It's different from the holding of the 10th and the 5th and the 4th circuits, I think, who have recognized that the administrative, the body of law supporting finality of administrative law decisions doesn't hold in many ways, and have therefore placed the beginning date at the time of the first denial. Like when Mr. Red was told at his parole hearing that your parole is denied and come back in two years. If that is the date, that is now the contention that apparently respondent is making. I simply see it as so much cleaner and so much more in line with the deference to state court decisions, but with the intent of the ADPA to have that be the date that triggers. And then there's one set of facts and legal conclusions to contend with that of the state court, and that there is a full year, but no more than that within which to prepare a petition challenging that state court decision. Okay. Thank you. I'll let you run over, but it's an important issue. Judge Gibson. No further questions. All right. The case just argued will be submitted. Counsel, thank you both for your argument.
judges: Hug, Gibson, Fisher